MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2025 ME 43
Docket:        Cum-24-94
Submitted
  On Briefs:   November 25, 2024
Decided:       May 20, 2025

Panel:         STANFILL, C.J., and HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

CITY OF PORTLAND

v.

MARC A. LESPERANCE

CONNORS, J.

[¶1]  Marc A. Lesperance believes that he should be allowed to let his dog off-leash in Baxter Woods throughout the year.  The City of Portland disagrees.  *See* Portland, Me., Code § 5-15.1(e)(1) (Oct. 5, 2020) (stating that in Baxter Woods, "[f]rom April 1 to July 31, all dogs must be on an eight (8) foot leash at all times"); Portland, Me., Code § 5-17(a) (March 20, 2009) ("No dog shall be permitted to be at large within the city.").

[¶2]  On June 14, 2023, a city park ranger was in the Woods when he encountered Lesperance and his dog, which was unleashed.  The park ranger explained to Lesperance that his dog needed to be leashed.  According to the park ranger's testimony, Lesperance responded by informing him that he "was very familiar with the rules and had no intention to follow them."  The park

2

ranger explained that, as it was his first day on the job, he would prefer to give Lesperance a warning, but Lesperance expressed no inclination to leash his dog and said he would remain in the Woods for the next twenty minutes. After conferring with a fellow park ranger, who arrived at the scene, the park ranger issued a summons and complaint to Lesperance for violating the Code. After a dispositional hearing, during which the City noted that this was not Lesperance's first violation of the dog-at-large ordinance, the District Court (Portland, *Nofsinger, J.*) issued a judgment fining Lesperance $500.

[¶3] Lesperance argues on appeal that the park ranger was not legally authorized to issue the summons and complaint.[1] We invited amici briefs to address this issue, including whether a park ranger appointed as a "constable"

---

[1] Lesperance also argues that the Code is preempted by state law and that the Code is unconstitutionally vague. These arguments lack merit. The ordinance is clear, *see Town of Baldwin v. Carter*, 2002 ME 52, ¶ 10, 794 A.2d 62, and the fact that state law defines dogs "[a]t large" for its purposes, *see* 7 M.R.S. § 3907(6) (2025), does not preempt a municipality's narrower definition in an ordinance. *See* 30-A M.R.S. § 3001 (2025); *Dubois Livestock, Inc. v. Town of Arundel*, 2014 ME 122, ¶ 13, 103 A.3d 556 ("[A]n ordinance will be preempted only when state law is interpreted to create a comprehensive and exclusive regulatory scheme inconsistent with the local action or when the municipal ordinance prevents the efficient accomplishment of a defined state purpose." (citations, alteration, and quotation marks omitted)).

To the extent that it is not addressed by our discussion below, Lesperance's argument that the park ranger was not authorized to issue a summons and complaint because his appointment order disallowed him from "mak[ing] arrests or issu[ing] parking tickets" also lacks merit, as does his argument that the park ranger was not authorized by the Code to enforce the dog-at-large ordinance. *See* Portland, Me., Code §§ 5-22 (March 20, 2009), 5-73 (July 1, 2009), 20-19 (Dec. 1, 2000), 20-19.5 (Dec. 1, 2000); *Desfosses v. City of Saco*, 2015 ME 151, ¶ 8, 128 A.3d 648 ("We . . . evaluate the plain language of the City's ordinance provisions in light of the entire ordinance scheme to achieve a harmonious result." (alteration and quotation marks omitted)).

pursuant to City Code §§ 20-19 and 20-19.5, such as the park ranger here, must satisfy the training requirements established in 25 M.R.S. § 2804-C(1) (2025) to be qualified to enforce an ordinance under M.R. Civ. P. 80H(b)(1) ("A citation may be filled out . . . and served upon the defendant within the state by any officer authorized to enforce a statute or ordinance to which this rule applies . . . .") and 30-A M.R.S. §§ 2671-73 (2025).[2]  *See* Portland, Me., Code §§ 20-19, 20-19.5 (Dec. 1, 2000).

[¶4]  The Attorney General, representing the Board of Trustees of the Maine Criminal Justice Academy, filed an amicus brief.  Acknowledging that the state statutes authorizing municipalities to appoint police officers, special police officers, and constables lack clarity about the qualification requirements for constables, the Attorney General indicated that the training for constables need not be as rigorous as for law enforcement officers enforcing criminal laws.

---

[2] Specifically, we asked:

1. Must a constable complete "the basic training course at the Maine Criminal Justice Academy," 25 M.R.S. § 2804-C, to be qualified as an "officer authorized to enforce a statute or ordinance" as that term is used in M.R. Civ. P. 80H?

2. May a municipality appoint as an "officer authorized to enforce a[n] . . . ordinance" under Rule 80H a person who is not a "constable" under 30-A M.R.S. § 2673?

3. Is a person appointed by the City as a Park Ranger an "officer authorized to enforce a[n] . . . ordinance" under Rule 80H, either as a "constable" under 30-A M.R.S. § 2673 or as a person authorized under other law?

4

*See* 30-A M.R.S. §§ 2671-73.  Responding to the Attorney General's amicus brief, the City argued that to interpret the state statutory scheme to require park rangers to meet the training requirements apparently imposed on constables would be "absurd."

[¶5]  As our request for amici briefing on this issue suggests, this authorization issue is not a simple one.  Given the broad implications of a ruling requiring constables to satisfy the qualification requirements for law enforcement officers, we presume that the Legislature may provide prompt clarification and, as suggested in the Attorney General's amicus brief, that constables issuing civil complaints might become authorized by satisfying less rigorous training requirements than officers with broader criminal enforcement duties.

[¶6]  In the meantime, however, we apply the "de facto officer" doctrine and conclude that Lesperance does not benefit from the uncertainty regarding the extent of the park ranger's legal authority.  Under this doctrine, Lesperance cannot successfully defend against the civil complaint here by arguing that the park ranger failed to satisfy the statutory credentials for his office, i.e., that he was not an officer "de jure."  *See Allen v. Hackett*, 123 Me. 106, 112, 121 A. 906,

909 (1923).  In *Allen,* which involved a constable whose authority to call a town meeting was challenged by the defendant, we said:

> It is unnecessary to discuss, and much less to decide, the various questions raised as to the legality of the appointment of the constable in the instant case . . . .  It is sufficient for the purposes of this case that the record discloses that the constable . . . was in any event an officer de facto.  His acts as such de facto officer were, in the instance named, valid acts.  His acts in that capacity are as valid, so far as the public is concerned, as the acts of an officer de jure.  His title cannot be inquired into collaterally.  "The precise definition of an officer de facto," observes Bigelow, Chief Justice, in *Fitchburg R.R. Co. v. Grand Junction R.R. & Depot Co*., 1 Allen 552, 557 (Mass. 1861), "is, one who comes in by the forms of law, and acts under a commission or election apparently valid, but, in consequence of some illegality, incapacity or want of qualification, is incapable of lawfully holding the office."  *In re Ops. of the Justs.*, 70 Me. 560, 565-66 (1880); *Brown v. Lunt*, 37 Me. 423, 428 (1854); *Hooper v. Goodwin*, 48 Me. 79, 80 (1861); *Stuart v. Ellsworth*, 105 Me. 523, 527, 75 A. 59, 61 (1909).  The acts of an officer de facto are valid when they concern the public or the rights of third persons, and cannot be indirectly called in question . . . .

*Id.* (citations cleaned up).  *See also State v. Poulin*, 105 Me. 224, 229-30, 74 A. 119, 121 (1909); *In re Ops. of the Justs.*, 70 Me. at 565–66; *D'Amato v. S.D. Warren Co.*, 2003 ME 116, ¶¶ 19-20, 832 A.2d 794; 87 C.J.S. *Towns* § 74 (2024); Kathryn A. Clokey, Note, *The De Facto Officer Doctrine: The Case for Continued Application,* 85 Colum. L. Rev. 1121, 1122-25 (1985).

6

[¶7]  Because the park ranger was at least a "de facto" officer, his acts, including the summons that he issued to Lesperance, were valid, and we therefore affirm the judgment.

The entry is:

Judgment affirmed.

_____

Marc A. Lesperance, appellant pro se

Amy R. McNally, Esq., City of Portland, Portland, for appellee City of Portland

Aaron M. Frey, Attorney General, and Andrew L. Black, Asst. Atty. Gen., Office of the Attorney General, Augusta, for amicus curiae Maine Criminal Justice Academy

Cumberland County Unified Criminal Docket docket number VI-2023-84