# WILLIAM T. BURGESS

## *v.*

## GEORGE R. DAVIS *et al.*

*Filed at Ottawa October 31, 1891.*

1. QUO WARRANTO—*against one holding office after termination of his title.* An information in the nature of a *quo warranto* lies under our statute, not only against a person who has usurped or intruded into an office, but also against a person who unlawfully holds an office to which he was at first entitled. If an officer rightfully elected and qualified, exercises the functions of his office after its termination, by subsequent occurrences, this proceeding is the appropriate remedy to oust him.

2. CHANCERY JURISDICTION—*to determine the right to an office and its emoluments.* A court of equity will not entertain jurisdiction for the purpose of enjoining a *de facto* incumbent of an office from performing its duties, or for enjoining the payment of fees, salary or emoluments of an office to a *de facto* incumbent thereof.

3. A court of equity will not interfere, by injunction, to determine questions concerning the election or appointment of public officers or their title to office, for the reason that a complete remedy is given by *quo warranto* in courts of law.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

Mr. WILLIAM T. BURGESS, *pro se:*

A tax-payer is entitled to injunction to prevent the wrongful appropriation of money belonging to a county, or to determine the rights of officers to their fees and salaries. *Wright* v. *Bishop*, 88 Ill. 303; *Colton* v. *Hanchett*, 13 id. 615; *Perry* v. *Kinnear*, 42 id. 160; *Beauchamp* v. *Supervisors*, 45 id. 274; *Drake* v. *Phillips*, 40 id. 392; *Sherlock* v. *Winnetka*, 59 id. 389; *Chestnutwood* v. *Hood*, 68 id. 132; *Livingston County* v. *Weider*, 64 id. 427; *Devine* v. *Cook County*, 84 id. 596; *Fitzgerald* v. *Harms*, 92 id. 375; *Jackson* v. *Norris*, 72 id. 366.

A *de facto* officer has no right to the salary of the office vacated by him after accepting an incompatible office, and such right can be determined in this proceeding. *People* v. *Weber*, 86 Ill. 283; *Glascock* v. *Lyons*, 20 Ind. 1; *United States* v. *Addison*, 22 How. 174; *People* v. *Weber*, 89 Ill. 347; *Riddle* v. *County of Bedford*, 7 S. & R. 392; *Fowler* v. *Beebe*, 9 Mass. 231; *Gates* v. *Delaware County*, 12 Iowa, 405; *People* v. *Carrique*, 2 Hill, 93; *Olmstead* v. *Dinnis*, 77 N. Y. 379; *People* v. *Nostrand*, 46 id. 375.

Messrs. Smith & Harlan, for the appellees:

A court of equity has no jurisdiction to determine the rights of officers to their offices. High on Injunctions, secs. 1312, 1314; *People* v. *Kilduff*, 15 Ill. 492; *People* v. *Matteson*, 17 id. 168; *People* v. *Head*, 25 id. 325; *People* v. *Hilliard*, 29 id. 414; *Delahanty* v. *Warner*, 75 id. 185; *Sheridan* v. *Colvin*, 78 id. 237; *Samuels* v. *Drainage Comrs.* 125 id. 536; *Tappan* v. *Page*, 9 Paige, 506.

Mr. Chief Justice Magruder delivered the opinion of the Court:

This is a bill filed on February 11, 1890, in the Circuit Court of Cook County by the appellant, as a citizen of the State and a resident property owner and tax-payer in said county, against George R. Davis, the treasurer of said County, Henry Wulff, the county clerk of said County, and Richard Prendergast, to enjoin Wulff as county clerk from drawing an order on the county treasury, and Davis as treasurer from countersigning and paying out of the county treasury, and Prendergast from receiving any money for salary payable to the county judge of said county. The defendants filed general demurrers to the bill. The Circuit Court sustained the demurrer and dismissed the bill at complainant's costs. This is an appeal from the judgment of the Appellate Court affirming such decree of the Circuit Court.

The bill is filed on behalf of the complainant and all other taxpayers of Cook County, and alleges that, in November, 1886, "Prendergast was duly elected Judge of the County Court of said county and duly qualified to act, and thereafter acted as such; that under the provisions of an act entitled 'An act to create sanitary districts, and to remove obstructions in the Desplaines and Illinois rivers of this State,' in force July 1, 1889, a sanitary district, called the Sanitary District of Chicago, in said county, became and was organized, and the said Richard Prendergast, having been elected a trustee thereof, on the 1st day of February, 1890, became and was qualified to act as such trustee, taking the oath of office as such on that day, and has since acted as such; that such office of trustee is not a judicial one, nor does it belong to the judicial department of the Government; that the performance of the duties of the office of trustee under said act is incompatible with the performance of the duties of the office of the judge of the County Court of said county; that the third article of the Constitution. of this State prohibits a judge from acting in any office in another department of the government of this State; that the, said Richard Prendergast, having accepted the office of trustee of said district after he was elected judge of the County Court of said county, has thereby resigned the office of judge of said County Court, and the said office is now vacant, by means whereof the said Richard Prendergast is not, after the said 1st day of February, 1890, and the acceptance of said office of trustee of said district, entitled to his salary as judge of said County Court, and the same ought not to be paid to him out of the funds of said county; that the Board of County Commissioners of said county have provided for the payment of a salary of $7000 a year out of the funds in the treasury in said. county, to the county judge of said county, which salary is payable quarterly, on the order of said clerk on the treasurer of said county; that the said Prendergast, claiming to act and acting as judge of said County Court, since said acceptance of

said office of trustee, claims to be entitled to his salary as such county judge, as provided to be paid to the person holding that office as aforesaid, and the complainant is fearful that the said Wulff, as county clerk, will draw an order on the treasury of the said county, and the said Davis, as treasurer, will countersign and pay the same out of the funds in said treasury, to the injury of complainant and other taxpayers in said county, unless restrained from so doing by order and injunction of this court."

The *Quo Warranto* Act provides "that in case any person shall usurp, intrude into or *unlawfully hold* or execute any office, etc., * * * the Attorney General or State's Attorney of the proper county, either of his own accord or at the instance of any individual relator, may present a petition to any court of record of competent jurisdiction, or any judge thereof in vacation for leave to file an information in the nature of a *quo warranto* in the name of the People," etc. The proceeding by *quo warranto* is thus authorized not only where a person has usurped or intruded into an office, but also where a person "*unlawfully holds*" an office. Where an officer has originally been elected or appointed in a legal and proper manner, his continued holding of the office may become unlawful by reason of subsequent occurrences. Such a case is presented by the allegations of the bill. The theory of the bill is that, by the acceptance of the office of sanitary trustee, the defendant Prendergast thereby vacated the office of county judge, and was thereafter unlawfully holding the latter office. Hence, under the statute as above quoted, the proper mode of proceeding against him was by information in the nature of a *quo warranto* in the name of the People.

"Courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers or their title to office, such questions being of a purely legal nature and cognizable only by courts of law." (2 High on Inj. 3d ed. sec. 1312.) Where a specific remedy

by *quo warranto* exists at law for the unlawful holding of an office, a court of equity will not entertain jurisdiction of the offense and will not grant an injunction against the incumbent of the office. (Idem.)

The bill admits that the defendant Prendergast was county judge *de facto* by setting up that he was "claiming to act and acting as judge of said county court since said acceptance of said office of trustee." A court of equity will not entertain jurisdiction for the purpose of enjoining a *de facto* incumbent of an office from performing its duties. Such result must be effected by judgment of ouster in a *quo warranto* proceeding.

It follows, that equity will not interfere to enjoin the payment of fees, salaries or emoluments to a *de facto* incumbent of an office. (2 High on Inj. 3 ed. sec. 1314). Public policy will prevent the courts from interfering to disturb a *de facto* officer in the receipt of the fees. (*Stone* v. *Wetmore*, 24 Ga. 601). The enjoyment of the fees, profits and advantages of the office are so connected with the proper discharge of the duties of the office itself that they cannot be separated. (*Tappan* v. *Gray*, 9 Paige, 507; *Colton* v. *Price*, 50 Ala. 424; *People* v. *Albany & Susq. R. R. Co.* 57 N. Y. 161; *McAllen* v. *Rhodes*, 65 Texas, 348). In *Tappan* v. *Gray, supra*, it was held that the defendant was an officer *de facto*, and had intruded himself into an office to which he was not entitled, and that the complainant was entitled to the fees and emoluments of the office, and yet it was at the same time held, that a court of chancery had no jurisdiction to enjoin the defendant from performing the duties or receiving the fees of the office.

For the reasons here stated we think the court below decided correctly in sustaining the demurrers and dismissing the bill.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*